UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
MICHAEL JASON FARELLA, :
:
                Plaintiff, :
   v. :        Civil Action No. 09-4910 (JAP)
:
:
RUTGERS UNIVERSITY POLICE :
DEPARTMENT, et al. :
:        **OPINION**
                Defendants. :
_____:

PISANO, District Judge.

    This matter is presently before the Court on Plaintiff's motion to amend the complaint and Defendants' motion to dismiss counts one and two of the original complaint, and upon the Report and Recommendation of United States Magistrate Judge Tonianne Bongiovanni as to these motions. Having received objections to the Report and Recommendation, the Court has conducted a *de novo* review of the issues raised.[1] *N.L.R.B. v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992). For the reasons discussed below, the Court shall adopt those parts of the Report and Recommendation not inconsistent with this Opinion, and shall grant Defendants' motion to dismiss counts one and two of the original complaint and grant in part and deny in part Plaintiff's motion to amend.

I.    Background

    The claims in this matter arise from an investigation and disciplinary action taken against

---

[1] Review of a magistrate judge's report and recommendation is governed by Local Civil Rule 72.1. The Rule provides that the Court "shall make a de novo determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c) (2).

Plaintiff, a member of the Rutgers University Police Department ("RUPD"), by Rutgers, The State University of New Jersey ("Rutgers"), Rhonda Harris, Chief of the RUPD and Kenneth Cop (together, "Defendants") pursuant to a complaint of misconduct that had been lodged against Plaintiff. Plaintiff alleges that Defendants improperly handled the disciplinary process against Plaintiff in violation of New Jersey law, RUPD's own policies and Plaintiff's constitutional rights.

By way of his motion, Plaintiff seeks to amend his complaint to: streamline the factual contentions from the original complaint; include allegations concerning three new Internal Affairs investigation and disciplinary actions that were initiated against Plaintiff since the filing of the original complaint; allege that defendants retaliated against Plaintiff for challenging his original Internal Affairs charges; add Kenneth Cop as a defendant; and add a *Monell* claim against RUPD. Defendants opposed Plaintiff's motion to amend, and cross-moved to dismiss the first and second counts of the original complaint.

The first count of the original and proposed amended complaint alleges violations of N.J.S.A. 40A:14-147, which governs the suspension and removal of police officers. In their motion to dismiss, Defendants asserted that the statute applies only to municipalities and has no application in the disciplinary process at an institution of higher learning such as Rutgers. As such, Defendants argued that the existing claims brought pursuant to this statute should be dismissed and Plaintiff's proposed amendment should be denied as futile.

The second count of the original and proposed amended complaint allege procedural due process claims. Defendants argued the second count of the complaint should be dismissed and leave to amend denied because N.J.S.A. 40A:14-147 does not apply to the RUPD and Plaintiff

2

cannot establish a constitutionally-protected property interest in his employment. *See Mudric v. Attorney General*, 469 F.3d 94, 98 (3d Cir.1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie").

The motion and cross-motion were referred by the undersigned to United States Magistrate Judge Tonianne Bongiovanni, who issued a Report and Recommendation ("Report") recommending that the cross-motion to dismiss be granted and the motion to amend be granted in part and denied in part. Magistrate Judge Bongiovanni found that N.J.S.A. 40A:14-147 applies only to municipal and county police officers and, therefore, does not apply to police officers employed by institutions of higher learning. Consequently, she recommended that Plaintiff's claims under that statute be dismissed and any amendment based upon that statute denied. However, Magistrate Judge Bongiovanni found that Plaintiff should be permitted to amend his complaint to, among other things, add claims against Defendants based upon Defendants' alleged violations of the Internal Affairs Policy and Procedures ("IAPP") promulgated by the New Jersey Attorney General. Pursuant to N.J.S.A. 40A:14-181, "[e]very law enforcement agency" is required to adopt and implement guidelines consistent with the IAPP. Rejecting Defendants' arguments that this requirement is inapplicable to the RUPD, Judge Bongiovanni found that "the RUPD had/has an obligation to adopt guidelines consistent with those outlined in the IAPP." Report at 13. Therefore, she concluded that Plaintiff should be permitted to amend his complaint to assert claims based upon Defendants' alleged violation of the IAPP.

Both parties have filed objections to the Report. Having reviewed the issues raised in the

objections *de novo*, the Court agrees with the conclusions reached by Judge Bongiovanni, although it reaches these conclusions based upon, in part, somewhat different reasoning.

II.     Legal Discussion

A.      Request to Strike Plaintiff's Objections

Pursuant to Federal Rule of Civil Procedure 72(b)(2), within 14 days of being served with a Magistrate Judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72. A party may respond to another party's objections within 14 days of being served with the objections. *Id.* Here, Defendants timely filed their objections to the Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) and L. Civ. R. 72.1(c)(2) (providing that a party may file its objections to a Magistrate Judge's report and recommendation within 14 days). Plaintiff, however, did not file any objections to the Report and Recommendation within the time period provided by the Rules. Rather, in his response to Defendants' objections, Plaintiff included his own objections to the Report and Recommendation. Defendants take issue with that portion of Plaintiff's filing setting forth Plaintiff's objections to the Report and Recommendation and have asked the Court to strike that portion as untimely.

In response to Defendants' request to strike, Plaintiff argues that the relevant rules do not foreclose his "cross-appeal or cross-objection, however it may be styled." Letter at docket entry 31. He further argues that to the extent Judge Bongiovanni's Order (and, presumably, Rule 72) permits a party to respond to another party's objections, "it does not, on its face, prohibit an objection to the [Report] within that response." *Id.* He then states that Local Rule 72.1 "provides absolutely no guidance whatsoever" as to whether a party may present (for the first

time) his objections to a magistrate judge's report and recommendation in their response to another party's objection. *Id.* Plaintiff asks, however, if the Court were to determine that Plaintiff "misread" the Order and applicable rules, that the rules be relaxed to allow his untimely objection.

The Court finds Plaintiff's argument that his submission is timely to be baseless. The deadline for submitting objections to a report and recommendation is clearly stated in the Rules. Plaintiff submitted his objections out of time and has not provided the Court with a sufficient explanation for the late submission. Nevertheless, in the interest of justice, the Court shall consider and address Plaintiffs objections to the Report.

B.     Defendants' Objections

Defendants object to that part of the Report in which Judge Bongiovanni found that N.J.S.A. 40A:14-181, which requires law enforcement agencies to adopt guidelines consistent with the IAPP, applies to the RUPD. Pursuant to N.J.S.A. 40A:14-181,

> Every law enforcement agency shall adopt and implement guidelines which shall be consistent with the guidelines governing the "Internal Affairs Policy and Procedures" of the Police Management Manual promulgated by the Police Bureau of the Division of Criminal Justice in the Department of Law and Public Safety, and shall be consistent with any tenure or civil service laws, and shall not supersede any existing contractual agreements.

Judge Bongiovanni found that because the statute refers to "every law enforcement agency," it "was intended to apply across the board to all law enforcement agencies" and not just, as Defendant argues, "municipal and county law enforcement agencies." Report at 13.

As codified, N.J.S.A. 40A:14-181 is contained in Title 40A, captioned "Municipalities and Counties," and Subtitle F, captioned "Fire and Police - Counties and Municipalities

Generally." As such, in objecting to the Report, Defendants argue that N.J.S.A. 40A:14-181 applies only to county and municipal police forces. They assert that the provision is inapplicable to the RUPD because RUPD is neither a municipal nor county police force but rather, Rutgers is an institution of higher learning and an instrumentality of the State. Defendants urge the Court to construe the language 40A:14-181 referencing "[e]very law enforcement agency" to mean "every county and municipal law enforcement agency." Def. Brf. at 3. In support of their argument, Defendants point to: (1) an absence of case law applying N.J.S.A. 40A:14-181 to a police department of an institution of higher learning; (2) the fact that other sections of the New Jersey Statutes expressly pertain to police officers of institutions of higher learning; and (3) the titles of Title 40A and Subtitle F, which Defendants allege should be read to limit the statute to only "municipalities" and "counties."

    The Court is not persuaded by Defendants' arguments. As an initial matter, while it is true that there appears to be no case law holding that N.J.S.A. 40A:14-181 applies to police departments of educational institutions, there is also no decision holding that it does not so apply. Moreover, unlike Judge Bongiovanni found with respect to the other provision at issue in this case, N.J.S.A. 40A:14-147, there is hardly a "plethora" of case law citing to the provision. As a result, the Court finds the absence of case law applying this statute to campus police departments to be of little significance.

    While Defendants remaining arguments based upon the arrangement of New Jersey's statutory compilation and the statute's placement in Title 40A may have some facial appeal, an examination of the codification process in New Jersey and the statute's legislative history reveals the arguments' flaws. Under New Jersey law, an administrative body, namely, the Office of

Legislative Services, is charged with the responsibility of codifying or "compiling" the state's statutes. N.J.S.A. 1:3-1 provides, in the relevant part, that

> [t]he [Office of Legislative Services] shall cause the several acts of each year to be designated as chapters, numbered in Arabic according to the order of time when they respectively became laws; and shall cause headnotes, descriptive of the contents, to be printed at the beginning of such sections as it shall deem appropriate, and *shall cause such sections of the several acts of each year to be marked with such compilation numbers as shall be appropriate in its judgment* ... .

N.J.S.A. 1:3-1 (emphasis added). Additionally, N.J.S.A. 52:11-61(g) provides that

> it is the "duty of the Legislative Counsel [counsel to the Office of Legislative Services] ... *[o]n behalf of the commission to assign appropriate compilation numbers to newly-enacted laws*, edit an annual cumulative table of contents to the laws, and initiate administrative corrections in the text of the laws as authorized and directed by R.S.1:3-1 and R.S.1:3-2.").

N.J.S.A. 52:11-61(g) (emphasis added). Thus, where an entirely new provision that supplements existing statutory law -- like that at issue here[2] -- is placed within a certain Title or Subtitle of the compilation of the New Jersey's statutes, such placement is not the product of legislative action but rather that of an administrative body's "judgment." N.J.S.A. 1:3-1. The Court finds, therefore, that the placement of N.J.S.A. 40A:14-181 in Title 40A, Subtitle F provides little, if any, indication of legislative intent with regard to the statute's application, and is certainly not dispositive of the issue of whether the Legislature intended the statute to apply to police departments of institutions of higher learning such as the RUPD. *See Wildwood Storage Center, Inc. v. Mayor and Council of Wildwood*, 260 N.J. Super. 464, 470, 616 A.2d 1331 (App. Div. 1992) (when interpreting a statute a court's duty is "to give effect to the legislature's intent").

---

[2]Prior to its enactment, the section that was ultimately codified as N.J.S.A. 40A:14-181 was designated in the bill as a "new section." Assembly No. 1836, § 10 [Fifth Reprint]. This section did not amend or even reference any existing statute.

The Court's conclusion in this regard is consistent with the Legislature's apparent recognition that where an administrative body, rather than the Legislature, is responsible for the arrangement of statutory sections, the resulting arrangement does not provide evidence of legislative intent. *See* N.J.S.A. 40A:1-6 ("The classification and arrangement of the several sections of the chapters of Title 40A have been made for the purpose of convenient reference and orderly arrangement and, therefore, no implication or presumption of a legislative construction is to be drawn therefrom."); N.J.S.A. 1:1-5 ("The classification and arrangement of the several sections of the Revised Statutes have been made for the purpose of convenience, reference and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom.").

Under New Jersey rules of statutory interpretation, when interpreting a statute a court is to look to the "'language of [the] statute, the policy behind it, concepts of reasonableness and legislative history.'" *D'Ambrosio v. Dep't of Health & Senior Servs.*, 403 N.J. Super. 321, 334, 958 A.2d 110 (App. Div. 2008) (quoting *Johnson Mach. Co. v. Manville Sales Corp.*, 248 N.J. Super. 285, 303-04, 590 A.2d 1206 (App. Div. 1991)). Here, absent the limitations Defendants urged the Court to read into the statute based upon its placement in the code, the plain language of N.J.S.A. 40A:14-181 compels the conclusion that the Legislature intended the statute to apply broadly to "every" law enforcement agency, including the RUPD.

To the extent that there is any ambiguity in statute, however, the legislative history of the provision supports the same result. N.J.S.A. 40A:14-181 was enacted as part of a more comprehensive statute, L. 1996, Chapter 115, entitled "[a]n act concerning law enforcement officers, and amending and supplementing parts of statutory law." This act, referred to as the

"Law Enforcement Officers' Protection Act," was intended to "clarify and codify certain law enforcement officer powers, protections, privileges and rights." Statement to Assembly No. 1836 (June 27, 1996). It, for example, provides for a sentence of life imprisonment without parole for those convicted of murdering a law enforcement officer, requires HIV testing whenever bodily fluids are transmitted between a law enforcement officer and an arrestee, and extends the tort claim immunity applicable to municipal police offices to other law enforcement under certain circumstances. L. 1996, Chapter 115.

As originally proposed, the relevant language of the provision codified as N.J.S.A. 40A:14-181 read as follows: "A law enforcement agency, as defined in [section 1 of this bill] ..." Assembly No. 1836, § 17 (May 2, 1996) [First Reprint]. The term "law enforcement agency" was defined within a general definitional section of the bill as

> any public agency, other than the Department of Law and Public Safety, any police force, department or division within the State of New Jersey, or any county or municipality thereof, which is empowered by statute to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal law of this State.

*Id.* § 1. This definition was quite broad and would have apparently encompassed campus police departments such as the RUPD, whose officers are by statute empowered with the same authority of other police officers in the state. *See* 18A:6-4.5. However, the general definitional section was later removed from the bill and, at the same time, the relevant language now found in N.J.S.A. 40A:14-181 added. Specifically, the language was changed from "*a* law enforcement agency as defined ..." to "*every* law enforcement agency ... ." Assembly No. 1836 § 10 [Fifth Reprint]. There is no evidence from the legislative history that in changing the applicability of the statute from "a" specifically defined set of law enforcement agencies to "every" law

enforcement agency that the Legislature intended in any way to limit the construction of "law enforcement agency." To the contrary, such a change would seemingly evince an intent to expand rather than restrict the reach of the provision.

In light of the above, the Court finds that N.J.S.A. 40A:14-181 is applicable to police departments of educational institutions such as the RUPD. Consequently, the Court shall adopt the recommendation of the Report permitting Plaintiff to amend his complaint accordingly.

C.     Plaintiff's Objections

Plaintiff objects to that part of the Report that finds N.J.S.A. 40A:14-147 does not apply to the RUPD. Plaintiff argues that the Court should reject Judge Bongiovanni's findings and recommendation as to Plaintiff's claims under N.J.S.A. 40A:14-147 and find that this section applies to the RUPD because (1) the IAPP "was based entirely on" this statute and the RUPD is required to adopt the IAPP, Pl. Brf. at 17; (2) New Jersey law grants campus police officers the same police powers as municipal police officers, and "this consistency should not only extend to the powers of the officer, but the powers of the officers' departments to bring charges against them and discipline them in uniform manner, *id.*; and (3) the RUPD attempted to comply "with the mandate to adopt an internal affair process," *id.* at 18. These arguments, however, fail to address the necessary elements of statutory interpretation and are simply without merit.

As Judge Bongiovanni found, while the text of N.J.S.A. 40A:14-147 itself does not limit its application to members of municipal and county police departments, its legislative history makes clear that it was intended to be limited in that way. In addition to the relevant legislative history pointed to by Judge Bongiovanni, this conclusion is evident from the language of the original enactment. N.J.S.A. 40A:14-147 was enacted as part of L. 1971, ch. 197, which the

Legislature entitled, in the relevant part, "An Act concerning county and municipal fire and police departments ...."  Almost all subsequent amendments to the statute were similarly titled. *See* L. 1981, ch. 75 ("An Act concerning certain county and municipal offices ..."); L. 1988, ch. 145 ("An Act concerning county and municipal law enforcement officers ...").  The Court, therefore, agrees with the conclusion in the Report that 40A:14-147 applies only to members of county and municipal police departments.  Consequently, the recommendations of the Report granting Defendants' motion to dismiss and denying Plaintiff's motion to amend shall be adopted.

III.     Conclusion

For the reasons above, the Court shall adopt those parts of the Report and Recommendation not inconsistent with this Opinion, and grants Defendants' motion to dismiss counts one and two of the original complaint and grants in part and denies in part Plaintiff's motion to amend.

/s/ JOEL A. PISANO
United States District Judge

Dated: September 30, 2010